Argued May 17, affirmed September 6, reconsideration denied
October 10, 1978, petition for review denied January 9, 1979

McQUAID, *Petitioner,*
*v.*
STATE ACCIDENT INSURANCE FUND,
*Respondent.*
(No. 580, CA 9771)
583 P2d 572

Cecil H. Quesseth, Salem, argued the cause and filed the brief for petitioner.

W. Benny Won, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee, Richardson, and Joseph, Judges.

RICHARDSON, J.

## RICHARDSON, J.

Petitioner appeals an order of the Employment Relations Board (ERB) denying his request for reinstatement of his position as an investigator for the State Accident Insurance Fund (SAIF). Petitioner contends: (1) he was denied due process because he was not provided a pretermination hearing; (2) the administrative rule under which he was terminated is unconstitutional in that it does not provide for a pretermination hearing; and (3) that ERB erred in finding he had abandoned his employment.

Petitioner had been employed by SAIF since 1975 as a special investigator for the Albany area. Although his home base was Albany his work necessitated extensive travel throughout the state. It was petitioner's practice to go into the SAIF home office in Salem on weekends to pick up his assigned cases and any messages and to leave the files on which he had completed his work. Petitioner's supervisors communicated with him by memorandum or telephone. It was the policy of SAIF to have the investigators contact the home office regularly and keep the supervisor advised of their location in the field. Petitioner was aware of this policy.

On October 8, 1976, petitioner's immediate supervisor directed the following memorandum to petitioner:

"During the week of October 4 through 8, 1976, numerous attempts have been made to contact you by telephone; without success, by myself and other investigators of this section.

"You have been instructed by the Division Director at Investigation meetings and by myself on various other occasions, to call this office at least once a week or more, giving your location.

"Please make arrangements to be in the Salem Office at 8 A.M. on Monday, October 11, 1976. At this time please bring in all SAIF equipment assigned to you, including outstanding late reports of investigation."

Petitioner picked up the memorandum at the Salem office on the weekend of October 9, 1976. He interpreted it as a notice of termination and left the following memorandum on his supervisor's desk:

> "Be advised all SAIF equipment is in the vehicle I now drive.
>
> "Look at my trip ticket and you will see where I was the week of 10-4 thru 10-8. I couldn't get you on the phone so I sent you a telegram—I'll bet Sally didn't short stop that!
>
> "It's real nice to get fired just before hospitalization—thanks a lot."

Petitioner did not appear at the Salem office on October 11, 1976, as requested. On that day the personnel director at SAIF sent the following letter to petitioner's Albany address:

> "I have been advised by your supervisor, Mr. Don Renz, that you did not report for work today, October 11, 1976, and that it appears that you have no intention of returning to your position with SAIF. Therefore, in accordance with Personnel Division Rule 71-200, if you do not report to your position with SAIF before the end of the working day on October 15, 1976, you will be deemed to have abandoned your employment with SAIF."

The letter was sent by certified mail and signed for by petitioner on October 13, 1976. Petitioner testified that although he had received the letter he did not open it until after October 28, when he was admitted to the hospital for psychiatric treatment. However, ERB found petitioner was aware of the contents of the letter prior to October 15, 1976. This finding was supported by substantial evidence. Specifically, SAIF received a letter from petitioner on November 15, 1976, stating in part:

> "Please be advised I did *not* abandon my employment with SAIF as your letter of 10-11-76 states. I was terminated via Memo dtd 10-8-76, paragraph 3, by Don RENZ. I was extremely upset by this Memo and was unable to comply with your letter of 10-11-76."

There was also testimony from a friend of petitioner that she saw the letter and spoke to petitioner regarding its contents on October 13 and 14, 1976. She tried to persuade petitioner to return to work.

The ERB found SAIF reasonably concluded petitioner had abandoned his job when he failed to appear by October 15, 1976, and his termination was justified pursuant to Rule 71-200.

Petitioner first argues he was denied due process by the failure of SAIF to give him notice and an opportunity for hearing prior to termination. He cites *Tupper v. Fairview Hospital,* 276 Or 657, 556 P2d 1340 (1976), and *Hammer v. OSP,* 276 Or 651, 556 P2d 1348 (1976), *cert granted and judgment vacated,* 434 US 945, 98 S Ct 469, 54 L Ed 2d 306 (1977).[1]

Both *Tupper* and *Hammer* concerned the procedural due process right of an employe who was discharged. They did not concern the resignation of a classified governmental employe. Petitioner's employment was terminated because of an implied resignation.

■ Personnel Division Rule 71-200 provides:

"Any unauthorized absence of an employe from duty shall be deemed to be an absence without pay and may be made grounds for disciplinary action by the appointing authority. In the absence of such disciplinary action, any employe who absents himself for five consecutive work days without authorized leave shall be deemed to have resigned. Such absence may be covered, however, by the appointing authority by a subsequent grant of leave with or without pay, when extenuating circumstances are found to have existed."

The rule speaks in terms of two types of personnel action. If there is an absence without leave of less than five consecutive work days the appointing authority

---

[1]The United States Supreme Court granted certiorari in *Hammer v. OSP,* 276 Or 651, 556 P2d 1348 (1976), vacated the judgment and remanded to the Oregon Supreme Court for reconsideration in light of *Dixon v. Love,* 431 US 105, 97 S Ct 1723, 52 L Ed 2d 172 (1977). The Oregon Supreme Court has not issued an opinion in reconsideration.

may take appropriate disciplinary action, including dismissal. If the employe is absent without leave for five consecutive days, the appointing authority *shall* consider that the employe has resigned. The action taken was based on the latter provisions of the rule. It was therefore a resignation not a dismissal. There is no requirement of due process that a pre-resignation hearing be held.

Petitioner requested, and was given, a post-separation hearing. The issue in that hearing was whether the necessary facts to invoke Rule 71-200 were met. The ERB found petitioner had notice he was to appear for work prior to the end of the work day on October 15, 1976, and that he was absent for five consecutive work days without leave. This finding was supported by substantial evidence in the record.

Petitioner contends the portion of the rule allowing a subsequent leave of absence implies the necessity of a pretermination hearing to determine if there are extenuating circumstances. Termination of employment because of implied resignation is based on failure to appear for work on at least five consecutive days; it is not based on the lack of extenuating circumstances. The rule gives the appointing authority the discretion to grant a retroactive leave of absence. Such a grant accords an employe terminated under the implied resignation provisions of the rule complete relief from resignation. Of necessity this discretionary action must come after the factors justifying termination have occurred, i.e., five consecutive days of absence without leave. Due process does not dictate that a hearing be held prior to action on the implied resignation. Petitioner was given an opportunity to appear for work and retain his employment. An opportunity to appear and explain the circumstances of his absence accords him no greater protection for his employment.

Petitioner next contends that Rule 71-200 is invalid because it does not afford him an opportunity to refute

the charges orally or in writing. Petitioner was given written notice that Rule 71-200 would be invoked if he did not appear for work. The only factor necessary for invocation of the rule is absence for five consecutive work days without leave. The rule thereby contains a statement of the facts which will be used for termination of employment. The only refutation available is for petitioner to appear for work prior to the expiration of the five day period. Petitioner was given an opportunity to refute the necessary factors by simply appearing for work. Assuming, as petitioner argues, the rule requires a notice and opportunity for informal hearing, petitioner was accorded these requirements.

■ Petitioner also argues the rule is invalid because it provides for presumption of resignation which goes beyond the statute upon which it is based. He contends the rule is based on ORS 240.510, which provides if an employe fails to report for work following a leave of absence this is grounds for dismissal. Since, he argues, the statute does not provide for implied resignation the administrator cannot so provide by rule.

The administrator is given authority by ORS 240.180 to "make such rules as are necessary to carry out the duties, functions and powers of the Personnel Division." The purposes of the Merit System Law as set forth in ORS 240.010 are to establish a system governing "the appointment, promotion, transfer, layoff, removal and discipline of * * * employes, and other incidents of state employment." The evident purpose is to construct a system by statute and administrative rule to control all aspects of state employment from appointment through termination. Termination of employment can occur by dismissal or by resignation. It is within this grant of rule making power for the administrator to specify what would be considered a resignation from employment. ORS 240.510 is not the statutory basis of Rule 71-200. That statute speaks to the particular situation where an employe fails to promptly return from a previously

granted leave of absence. The rule concerns the situation where an employe is absent without a previously granted leave.

In his final contention petitioner argues the ERB was in error in finding he had abandoned his job. The rule sets forth the basis under which the appointing authority shall conclude an employe has resigned, i.e., failure to report to work for five consecutive days. There was substantial evidence in the record to support the ERB's findings. Harshness in applying the rule is mitigated by the right of the appointing authority to cover the absence by a retroactive leave. Petitioner makes no argument that he sought a retroactive leave and that it was improperly denied. His principal contention is that he did not open the letter in time to appear for work by October 15, 1976, and therefore did not voluntarily abandon his employment. As indicated above, the ERB found he was aware of the letter's contents and did not appear. This finding was supported by substantial evidence.

Affirmed.